### KEYES v. ANDERSON.

(Circuit Court of Appeals; Eighth Circuit. December 16, 1919.)

No. 5335.

1. INDEMNITY ⟨⇒⟩8—CONTRACT TO INDEMNIFY BANK AGAINST LOSS FROM UN-COLLECTIBLE ASSETS COVERED FORGED OR PAID NOTES.

A contract executed by directors and stockholders of a national bank, on a statement by the examiner that he regarded notes receivable shown on its books as of doubtful value and intended to report it insolvent, by which they bound themselves to indemnify the bank "against any loss whatever which said bank may hereafter sustain by reason of its inability to realize upon or collect in the full amount or value of the assets of said bank as shown by its books of account as of this date." held to cover notes so shown on the books, which were forged or which had been paid.

2. INDEMNITY ⟨⇒⟩3—CONSIDERATION FOR CONTRACT TO INDEMNIFY BANK.

Contract by directors and stockholders of a national bank to indemnify it against loss from uncollectible assets, made to prevent closing of the bank by the Comptroller for insolvency, held based on sufficient consideration.

3. INDEMNITY ⟨⇒⟩3—DELIVERY TO COMPTROLLER OF CONTRACT TO INDEMNIFY BANK SUFFICIENT.

Delivery to the Comptroller of a contract by directors and stockholders to indemnify a national bank against loss from uncollectible assets, made to prevent closing of the bank for insolvency, held sufficient.

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Action at law by Paul C. Keyes, receiver of the First National Bank of Clarkfield, Minn., against Peter Anderson. From the judgment, plaintiff brings error. Reversed.

J. N. Johnson, of Canby, Minn., for plaintiff in error.

C. A. Fosnes, of Montevideo, Minn. (Ole Hartwick, of Granite Falls, Minn., on the brief), for defendant in error.

Before CARLAND and STONE, Circuit Judges, and YOUMANS, District Judge.

STONE, Circuit Judge. This is an action by the receiver of a national bank upon a contract for $66,579.95. The charge of the court

limited recovery to $770.14. From a recovery for such amount the receiver brings his writ of error.

[1] The entire sum asked in the petition was represented by notes held by the bank. Of these notes $770.14 were unpaid notes; the balance were notes which had been paid or forged by the cashier. The court eliminated recovery for the paid and forged notes, upon the theory that they were not included in the terms of the contract in suit. The one proposition here presented is whether such notes were within the contract, which is as follows:

"Bond.

"Whereas, the First National Bank of Clarkfield, Minn., a corporation created and existing under the laws of the United States, is in financial difficulty through negligence on the part of the management in not urging collection on maturing paper, and the bank examiner, acting as agent of the Comptroller of the Currency, has notified the undersigned directors and stockholders of said bank that the assets are of such nonliquid character that it may be unable to meet its obligations as they mature: and

"Whereas, the undersigned directors and stockholders of said bank are interested in protecting said bank and its depositors against loss in consequence of the doubtful character and value of its assets, and to prevent the insolvency of the bank:

"Now, know all men by these presents that we, the undersigned directors and stockholders of said First National Bank of Clarkfield, Minn., in consideration of the premises and of the sum of one dollar ($1.00) to each of us paid by the said bank, the receipt whereof is hereby acknowledged, do hereby, jointly and severally, covenant and agree to and with said bank that we shall and will indemnify and save said bank harmless against any loss whatever which said bank may hereafter sustain by reason of its inability to realize upon or collect in the full amount or value of the assets of said bank as shown by its books of account as of this date; and we further, jointly and severally, agree that we will, at any time hereafter, at the request of the cashier of said bank, or upon the demand of the Comptroller of the Currency, purchase from said bank any assets now owned or held by said bank which the said Comptroller of the Currency, or his agent, the national bank examiner, appointed to examine said bank, may designate as of doubtful value, and to pay to said bank therefore in cash the value or amount at which the said assets are now carried upon the books of the said bank.

"In witness whereof, we have hereunto set our hands and seals this 19th day of June, A. D. 1917.      George J. Piersol.   [Seal.]
                                                    "Peter Anderson.     [Seal.]
"Witness: O. A. Carlson, N. B. Examiner."

Anderson contends that the forged and paid notes cannot be regarded as assets within the meaning of the contract, and that, even if this be not true, yet, as the contract indemnified only against such loss as the bank might suffer after the contract, there was no loss, since that paper was worth as much afterwards as it was at the time the contract was made.

The argument on the first contention is that the word "assets" does not include worthless paper, as it has no value, and therefore cannot be an asset. The case cannot turn upon such a view, but it must be determined by what the parties at the time of the contract meant that word should cover. An examination of the circumstances surrounding the making of the contract and of the object and purpose of the contract reveals the following:

The bank examiner had just made an examination of the bank, which convinced him that it was in such condition that he could not pass its solvency. This condition was brought about in his opinion by the doubtful value of a large portion of the notes held by it. These notes showed on the books of the bank at their face value as assets, and if in fact worth approximately what those books showed as their value, the bank was solvent. The examiner made known to three of the directors and officers, including Anderson, how he regarded these notes, and also his intention of reporting the bank as insolvent, unless such assets were fortified by a bond or contract guaranteeing their worth to be as represented on the books. It was for the sole purpose of establishing such a value for those notes that this contract was made. If it had not been made, and these assets so fortified, he would have reported the bank as insolvent, and Anderson understood that situation thoroughly at the time he signed the contract. Therefore what all of the parties intended to do through this contract was to place Anderson and his cosigner, Piersol, back of the value of those notes as shown on the bank books. The contract sufficiently expresses that intention by binding Anderson to "indemnify and save said bank harmless against any loss whatever which said bank may hereafter sustain by reason of its inability to realize upon or collect in the full amount or value of the assets of said bank *as shown by its books of account as of this date*" (italics ours).

Much emphasis is laid on the claim that Anderson did not know at the time the contract was made that any of these notes had been paid or forged, and were therefore worthless, and therefore that all he intended to guarantee was the payment of overdue notes. It is highly probable that he thought that was all that he was doing; but what the examiner insisted upon, what the contract was designed by all parties to do, and what it did do, was to assure the bank of assets to the value of the notes as represented upon its books. Under these circumstances it makes no difference whether or not Anderson knew the true character of the notes.

The second contention is clearly not justified. The entire situation, as above outlined, shows that what the parties intended was to remove the doubt and objection of the examiner by putting the credit of Anderson and Piersol back of the value of the notes as shown on the books. The examiner was not uneasy lest that value decrease, but he was critical whether it could be realized in cash. It was to meet that criticism that the contract was made.

[2] While not involved in this writ by the receiver, yet both parties have argued the sufficiency of the consideration for the contract. The permission to continue business and not to be reported as insolvent was a sufficient consideration.

[3] Anderson questioned below that any proper delivery of the contract had been made, because the bond had not been delivered to the bank. That point was not discussed here orally, though mentioned in the brief of counsel for Anderson. We are convinced that the delivery was sufficient. The contract was taken by the examiner in the name of the bank and for the protection of its depositors, credi-

tors, and stockholders. The original was forwarded to the Comptroller at Washington, and the two copies retained by the examiner. It is the business of the Comptroller's office, of which the examiner was a part, to make such examinations and to take such steps, within the law, as seem necessary to protect national banks, and those who deal with them. This contract was taken in pursuance of that power, and it was unnecessary that the contract be delivered to the bank.

The judgment is reversed, and the case remanded for proceedings not inconsistent with this opinion.